**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Octavio Perez, Individually, and on behalf of all others similarly situated, | ) Case No. _____ )  ) |
| Plaintiff, | ) ) |
| vs. | ) **CLASS ACTION COMPLAINT** ) ) **DEMAND FOR JURY TRIAL** ) |
| Intellicheck, Inc. | ) ) |
| Defendant. | ) ) ) |

**CLASS ACTION COMPLAINT**

Now comes Plaintiff, Octavio Perez ("Plaintiff"), on behalf of himself and all other similarly situated, through Counsel, and pursuant to Fed. R. Civ. P. 23, against Defendant, Intellicheck, Inc. ("Intellicheck" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collections, obtainments, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics"). Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Intellicheck is a publicly traded identity validation company which performs "know your client" ("KYC") functions on behalf of its clients. Many, if not all, of these KYC functions involve the collection, retention and disclosure of the end user's biometric information.

2. Plaintiff has worked as delivery driver for GoPuff – an app based consumer foods

delivery company – out of their Chicago, Illinois warehouse since 2021 and had his biometric information processed by Intellicheck as part of the process of signing up for his account.

3. As part of signing up, and/or being permitted to continue his work for GoPuff, Plaintiff has routinely been required to upload a picture of (1) a valid state-issued identification; and (2) a real time portrait of his face, i.e. a "selfie."

4. In these instances, GoPuff utilizes the services of Intellicheck, who scans the "selfie" photograph, creates a biometric template of the user's face, and compares the user's facial biometrics to the photograph on the identification document to confirm whether they match.

5. GoPuff drivers, including Plaintiff, are required to undergo this biometric authentication in order to perform their work for GoPuff. This KYC function performed by Intellicheck allows GoPuff to ensure that their drivers, such as Plaintiff, are not subcontracting out their work for GoPuff.

6. Intellicheck collects, stores, possesses, otherwise obtains, uses, and disseminates its users' biometric data to, amongst other things, further enhance GoPuff and its online platform.

7. Facial geometry scans are unique, permanent biometric identifiers associated with each user that cannot be changed or replaced if stolen or compromised. Intellicheck's unlawful collection, obtainment, storage, and use of its users' biometric data exposes them to serious and irreversible privacy risks. For example, if Intellicheck's database containing facial geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, Intellicheck customers have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

8. The Illinois legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Heard v. Becton, Dickinson & Co*., 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020),

citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1199 (2019).

9. Courts analogize an individual's privacy interest in their unique biometric data to their interest in protecting their private domain from invasion, such as from trespass. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), as amended on denial of reh'g and reh'g *en banc*, (June 30, 2020) and opinion amended on denial of reh'g *en banc*, 2020 U.S. App. LEXIS 20468, 2020 WL 6534581 (7th Cir. 2020).

10. In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Intellicheck may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

11. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse,

is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*.

12. Specifically, upon information and belief, Intellicheck has created, collected, and stored thousands of "face templates" – highly detailed geometric maps of the face from countless Illinois residents whose selfies and state-issued ID's were collected by Intellicheck. Each face template that Intellicheck extracts is unique to a particular individual in the same way that a fingerprint or voiceprint uniquely identifies a particular individual.

13. Intellicheck is a "private entity" as that term is broadly defined by BIPA and Intellicheck is subject to all requirements of BIPA. *See* 740 ILCS § 14/10.

## JURISDICTION AND VENUE

14. This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 et seq.) brought pursuant to Fed. R. Civ. P. 23 seeking statutory and actual damages.

15. Venue is proper in this Court because a substantial amount of the acts and omissions giving rise to this action occurred within this judicial district.

16. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and the proposed class members are all residents of Illinois, Intellicheck is domiciled in New York, and the amount in controversy exceeds $75,000.

17. This Court has jurisdiction over this dispute pursuant to the Class Action Fairness Act ("CAFA") because the prospective class includes over 100 people and the amount in controversy exceeds $5,000,000.

18. At all relevant times, Plaintiff and the proposed Class are residents of the state of Illinois and the violations of BIPA as detailed herein occurred while Plaintiff and the proposed Class were in the state of Illinois.

19. At all relevant times, Intellicheck, Inc. is incorporated in Delaware with its principal place of business located in Melville, New York.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

20. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

21. Plaintiff began his work for GoPuff in Chicago, Illinois in 2021.

22. As part of signing up, and/or continuing his work for GoPuff, Plaintiff has been routinely required to upload a picture of (1) a valid state-issued identification; and (2) a real time portrait of his face, i.e. a "selfie."

23. As part of this process, Intellicheck has scanned Plaintiff's "selfie" photograph, creating a biometric template of the Plaintiff's faces and biometric identifiers, and compared Plaintiff's biometric identifiers to the photograph on her state issued identification document to confirm whether they match.

24. GoPuff drivers, including Plaintiff, are required to undergo this biometric authentication in order to perform their work for GoPuff. This KYC function performed by Intellicheck allows GoPuff to ensure that their drivers, such as Plaintiff, are not subcontracting out their work for GoPuff.

25. In other words, Intellicheck, as a processor for GoPuff, collected and retained biometric information for the purpose of verifying Plaintiff's identity.

26. Plaintiff was never informed in writing that Intellicheck was collecting or storing his biometric information.

27. Instead, Plaintiff was simply instructed to upload his state issued identification forms and "selfie" photographs as part of his overall work for GoPuff.

28. In fact, Intellicheck made no mention of biometric information, collection of biometric information, or storage of biometric information to Plaintiff.

29. Moreover, Intellicheck did not inform Plaintiff in writing of the specific purpose and length of term for which his biometric information was being collected, stored, and used.

30. Intellicheck collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff which would consent to or authorize Intellicheck to do the same.

31. Intellicheck collected, stored, and used Plaintiff's biometric information without ever receiving Plaintiff's informed consent.

32. Additionally, Intellicheck disclosed, redisclosed, or otherwise disseminated a Plaintiff's biometric information (1) without Plaintiff's consent; (2) without Plaintiff's authorization to complete a financial transaction requested or authorized by Plaintiff; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

33. Upon information and belief, Intellicheck, Inc. utilizes numerous third party "Service Providers", all of which have had Plaintiff's biometric information disclosed, redisclosed or otherwise disseminated to them via their role Service Providers assisting Intellicheck with its identity verification services.

34. Intellicheck's collection and retention of biometric information as described herein is not unique to Plaintiff and is instead part of Intellicheck's policies and procedures which Intellicheck applies to all of its users, including the Class Members.

## RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

35. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

36. Plaintiff brings Claims for Relief in violation of BIPA as a class action under Rule 23(a), (b)(2) and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following Rule 23 Class:

> **All Illinois residents who had their biometric information collected by Intellicheck at any point in the five (5) years preceding the filing of this Complaint.**

37. In the alternative, and for the convenience of this Court and the parties, Plaintiff may seek to certify other subclasses at the time the motion for class certification is filed.

38. **Numerosity (Rule 23(a)(1))**. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are more than 1,000 people who satisfy the definition of the Class.

39. **Existence of Common Questions of Law and Fact (Rule 23(a)(2))**. Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

  a. Whether Intellicheck collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifiers or biometric information, without first: (1) informing Plaintiff and the Class Members in writing that a biometric identifier or biometric information is being collected or stored; (2) informing Plaintiff

and the Class Members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used; and (3) receiving a written release executed by Plaintiff and the Class Members;

      b.      Whether Intellicheck disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers or biometric information (1) without Plaintiff's and the Class Members' consent; (2) without Plaintiff's and the Class Members' authorization to complete a financial transaction requested or authorized by Plaintiff and the Class Members; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction; and

      c.      The damages sustained and the proper monetary amounts recoverable by Plaintiff and the Class Members.

      40.      **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, had their biometric identifiers and biometric information collected, retained or otherwise possessed by Intellicheck without Intellicheck's adherence to the requirements of BIPA as detailed herein.

      41.      **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions.

      42.      **Injunctive and Declaratory Relief (Rule 23(b)(2))**. Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because Intellicheck acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

43. **Predominance and Superiority of Class Action (Rule 23(b)(3))**. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Intellicheck's common and uniform policies and practices illegally deprived Plaintiff and the Class Members of the privacy protections which BIPA seeks to ensure; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Intellicheck's practices.

44. Plaintiff intends to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

### COUNT ONE: VIOLATION OF 740 ILCS § 14/15(b)

45. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

46. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS § 14/15(b).

47. Plaintiff was never informed in writing that Intellicheck was collecting or storing his biometric information.

48. Instead, Plaintiff was simply instructed to upload his state issued identification forms and "selfie" photographs as part of his overall work for GoPuff.

49. In fact, Intellicheck made no mention of biometric information, collection of biometric information, or storage of biometric information to Plaintiff.

50. Moreover, Intellicheck did not inform Plaintiff in writing of the specific purpose and length of term for which his biometric information was being collected, stored, and used.

51. Intellicheck collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff which would consent to or authorize Intellicheck to do the same.

52. Intellicheck collected, stored, and used Plaintiff's biometric information without ever receiving Plaintiff's informed consent.

58. As such, Intellicheck's collection of Plaintiffs' and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

## COUNT TWO: VIOLATION OF 740 ILCS § 14/15(d)

59. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

60. No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS § 14/15(d).

61. While discovery will ascertain all of the ways in which Intellicheck disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric information, Intellicheck admittedly utilizes numerous third party "Service Providers", all of which have had Plaintiff's biometric information disclosed, redisclosed or otherwise disseminated to them via their role as Service Providers assisting Intellicheck with its identity verification services.

62. Moreover, Intellicheck disclosed, redisclosed, or otherwise disseminated Plaitniff's and the Class Members' biometric information to Intellicheck's clients.

63. Intellicheck's disclosures, redisclosures, or otherwise disseminating of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(d).

**WHEREFORE**, individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action and appointing the undersigned counsel as class counsel; (2) a declaration that Defendant has violated BIPA, 740 ILCS 14/1 *et seq*.; (3) statutory damages of $5,000.00 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Defendant's violations of BIPA were not willful; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS 14/20(3); (5) actual

damages; and (6) for any other relief deemed appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Dated: March 24, 2024

                                        Respectfully submitted,

                                      s/ *Michael L. Fradin*
                                      Michael L. Fradin, Esq.
                                      8401 Crawford Ave. Ste. 104
                                      Skokie, IL 60076
                                      Telephone: 847-986-5889
                                      Facsimile: 847-673-1228
                                      Email: mike@fradinlaw.com

                                      By: /s/ *James L. Simon*
                                      James L. Simon (*pro hac vice* forthcoming)
                                      SIMON LAW CO.
                                      11 ½ N. Franklin Street
                                      Chagrin Falls, Ohio 44022
                                      Telephone: (216) 816-8696
                                      Email: james@simonsayspay.com